IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION


ARTHUR LOWE, #669750            §

VS.                                 §                  CIVIL ACTION NO. 6:10cv310

JACOB A. RICHARDSON        §


MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Arthur Lowe ("Lowe" or "Plaintiff"), an inmate confined in the Michael Unit of the

Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"),

proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit

under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the

parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on June 22, 2010. In it, Plaintiff claims that for an

unspecified period of time beginning on September 19, 2009, the Michael Unit where Plaintiff is

housed was placed on lock-down. During that time, he alleges, all of his meals were delivered to

his cell in the form of sack meals prepared by the prison's Food Services. He contends that the sack

meals were too cold to eat, and appeared to have been stored under refrigeration below 40 degrees.

Plaintiff alleged that, being indigent, he was totally dependent on the prison's food and could not

purchase food items from the commissary. The sack meals contained food such as fish, peanut

butter, or hamburger patty sandwiches, with some variation; or, for breakfast, a fried egg and a

1

peanut butter sandwich, among other items. He claims that the food was so cold that when they thawed out, they tasted like water and were inedible. He attempted to warm some of them up using his cellmate's (or "cellie's") hot pot, but the result was the same. He complained to the officers delivering the food, but their answer was typically "It's what the Kitchen sent."

Plaintiff alleges in his complaint that he went for days without eating and lost weight, though he could not tell how much because he was not allowed to go to the infirmary during the lock-down to weigh himself unless there was a medical emergency. He pursued Step One and Step Two grievances using the TDCJ-CID grievance procedure, complaining to Food Service Captain Jacob A. Richardson, the Defendant, to no avail.

On August 26, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id*. at 180. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden William Motal and Licensed Professional Counselor Robert Criss, M.Ed., testified under oath about prison policies and information contained in the Plaintiff's prison records.

Plaintiff testified that the Michael Unit had been locked down beginning September 16, 2009,[1] and meals served in "johnny sacks" or sack meals were provided to the prisoners at their cells.

---

[1]     Although Plaintiff's complaint stated the lockdown started September 19, 2009, records produced by Regional Grievance Supervisor Lively revealed that it started September 16, 2009, and ended 12 days later on September 28, 2009. Plaintiff did not dispute these dates and adopted them in his testimony.

Such meals always contained sandwiches, usually some type of meat and/or peanut butter with other items and something to drink. He testified that they were "real cold" and therefore inedible, though they were not frozen. For example, he testified, a fish sandwich that had been refrigerated that cold did not warm up to being edible. He said he ate some things at times but went "for days" without eating. He complained, but the guards simply told him, "It's what the Kitchen sent." Plaintiff also testified he sent I-60 grievances to Captain Richardson in Food Services (who has apparently been transferred to another unit since this incident) about the inedible sandwiches but obtained no relief.

Plaintiff further testified that his cellie gave Plaintiff some soup and chips from time to time that he obtained from the commissary, although the two generally did not get along well together. Plaintiff himself had no money to buy items from the commissary. Notwithstanding his cellie's largesse, Plaintiff reiterated that he went without food for three to four days because of the allegedly inedible, cold sack meals and said he knew that he had lost weight as a result. He could not say how much he thought he had lost because, even after the lockdown ended, movement inside the prison was still limited and he was not allowed to go to the infirmary to weigh himself unless there was a medical emergency.

Warden Motal testified that johnny sack-style meals are typical during a lockdown. The lockdown in question was a semi-annual routine, during which prisoners were provided three sack meals a day. He testified that the prison's Food Services followed a menu guide from its Huntsville office and balanced meals with sandwiches made up of burger patties, fish or peanut butter, with other sundries such as raisins and something to drink.

Licensed Professional Counselor Criss testified that Plaintiff's medical records contained no indication of any weight loss; in fact, the opposite was true. Plaintiff's weight was recorded as 213

pounds on September 2, 2009, before the lockdown. On October 2, 2009, the closest recorded date to the end of the lockdown on September 28, his weight was 227 pounds. Plaintiff did not contest these figures.

Regional Grievance Supervisor Lively testified that Plaintiff had exhausted his claims through the prison grievance system and presented Plaintiff's medical, classification and grievance records for review. Plaintiff agreed that the Court could review his records for the purpose of this action.

Plaintiff added that he had a copy of the TDCJ-CID Food Services lockdown manual, which he asserted addresses the nutritional adequacy of the food served during lockdown, but does not require food to be kept below 40 degrees. Therefore, he contended, TDCJ did not follow its own policy and if it had done so, the food would not have been inedibly cold.

He then consented to jurisdiction by the undersigned Magistrate Judge.

<u>Discussion and Analysis</u>

Plaintiff's complaint does not explicitly state a constitutional basis for his § 1983 action. Further, he did not identify one during his *Spears* testimony. However, based on that testimony, the Court construes Plaintiff's claim as one for cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard for determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1984) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 596 (1958) (plurality opinion)). Conditions "alone or in

combination" may amount to a constitutional violation. *Rhodes*, 452 U.S. at 347. The Constitution does not require that prisoners be provided with every amenity, but inmates must be furnished with the basic necessities of life, which includes reasonably adequate food, clothing, shelter, sanitation, medical care and personal safety. *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977). However, as the Supreme Court emphasized in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. *See also Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) ("[i]t is well settled that 'the Constitution does not mandate comfortable prisons,' and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment," quoting *Rhodes*, 453 U.S. at 347, 349); *Alberti v. Sheriff of Harris County*, 937 F.2d 984, 998 (5th Cir. 1991), *cert. denied sub nom. Richards v. Lindsay*, 504 U.S. 930, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992).

Issues specifically concerning food have been brought to the attention of the Fifth Circuit on many occasions. The State must furnish its prisoners with reasonably adequate food. *Newman*, *supra*, 559 F.2d at 291. The meals must be well balanced and containing nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977). The prison system is not required to provide inmates with three meals a day. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.), *reh'g denied*, 807 F.2d 995 (5th Cir. 1986) *and* 808 F.2d 56 (5th Cir. 1986). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (5th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986). Here, Plaintiff similarly does not have a basis for a claim because the food was served cold. The sack meals were prepared according

to nutritional guidelines in the Food Service manual Plaintiff produced during the *Spears* hearing, which Plaintiff himself pointed out. Further, Plaintiff's medical records reveal that he gained 14 pounds of body weight, from 213 to 227 pounds, in the period of time including the 12-day lockdown. Clearly, despite his claim of not eating for days at a time, he has not been denied reasonably adequate food. He has alleged no physical injury other than possibly occasional hunger and a disproved belief he lost weight. This does not rise to the level of an Eighth Amendment violation. *Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999). Therefore, the Plaintiff has not alleged facts showing that the conditions of his confinement amount to cruel and unusual punishment.

In conclusion, the Plaintiff's claims in this lawsuit fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **3** day of **September, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE